TRINITY UNIVERSAL INSURANCE COMPANY ET AL. v.
TOWN OF SPEEDWAY ET AL.

[No. 19,974. Filed September 14, 1965.]

*Erle A. Kightlinger* and *Howard J. DeTride, Jr.*, of Indianapolis, for appellant, Allied Paving. Corp.

*Hugh E. Reynolds*, and *Locke, Reynolds, Boyd & Weisell*, of Indianapolis, for appellant, Trinity Universal Insurance Company.

*Henry Ryder, Herbert J. Backer, Ruckelshaus, Bobbitt & O'Conner, Dann, Backer & Pecar,* and *Roberts & Ryder,* all of Indianapolis, for appellees.

SMITH, J.—This action was brought by the appellees against the appellants to recover damages on a maintenance bond for the construction of sewers and streets and for the alleged breach of a maintenance contract on the part of the appellant Allied Paving Corp.

The appellees' complaint contained two paragraphs, the first was filed against both the Trinity Universal Insurance Company and the Allied Paving Corp. alleging therein that the appellee, Phillip Development Corp., and the appellant, Allied Paving Corp., entered into a contract whereby the latter contracted to install and construct storm sewers, sanitary sewers, house sewer connections, road gradings and streets and sidewalks in the Town of Speedway. The complaint further alleged that Allied Paving Corp. was required to furnish a performance bond running to the Town of Speedway, and also to furnish a maintenance bond running to the Town of Speedway, which maintenance bond was to extend for a period of one year following the completion and acceptance of the work. The complaint further alleged that the appellant, Trinity Universal Insurance Company, did furnish a performance bond and a maintenance bond and, that by virtue of said bonds, became a surety. The complaint further alleged that within one year following the completion of the work contracted for, the streets became cracked and the appellants refused to repair them and that the appellees were damaged in the amount of $50,000.00.

The second paragraph of the complaint was directed solely to the appellant, Allied Paving Corp., and again alleged the fact of the contract which required Allied

Paving Corp. to perform the work in a good and workmanlike manner and provided further that the Allied Paving Corp. did agree to remedy all defects due to faulty material and workmanship which might appear within one year following the date of the completion of the contract. The second paragraph further alleged that defects appeared within one year following the date of the completion of the contract, which defects were caused by Allied Paving Corp.'s failure to provide sufficient compaction to the sub-grade of the street before applying the final surfacing, and the failure to allow sufficient time for the drying and settling of the sub-grade before applying the final surfacing.

The case was tried by jury, which returned a verdict for the appellees in the sum of $26,900.00 and judgment was thereafter entered in accordance with the verdict.

The sole assignment of error is the overruling of the motion for new trial. The appellants have set forth four specific errors in their brief upon which they rely for reversal. They failed to discuss the remaining specifications contained in the motion for new trial and in compliance with Rule 2-17 of the Supreme Court they are hereby deemed to be waived.

The appellants contend that the court erred in failing to strike out the testimony of one Edwin C. Kridler, the Town Engineer for the Town of Speedway, after he had testified to the cost of making the necessary repairs to the street. The appellants allege that Kridler attempted to qualify as an expert witness and, on rebuttal, he testified that in arriving at an opinion of the estimated cost of repairing the street he had consulted with the representatives of the Indiana Asphalt Paving Company, the Portland Cement Con-

crete Association, and of Roadways, Inc.; and, since none of these representatives were called to testify, the testimony of Kridler was based on hearsay and was improperly admitted.

In resolving this alleged error it is necessary to examine the witness' entire testimony. Kridler testified that he was the Town Engineer, that his duties involved the general maintenance of the town, the overseeing of the general operation of the sewage works, the streets, the drainage, and all other general maintenance. He detailed his qualifications and background in order to qualify as an expert, and in so doing, testified that he was a graduate of Indiana Technical College and had been employed in various positions which required engineering experience. As part of his direct examination Kridler testified as follows:

"Q. Mr. Kridler, in your position as Town Engineer, do you have occasion to know what the costs of materials are for street improvements?

"A. Yes.

"Q. Will you state whether or not, as a part of your duties, you are required to design and estimate costs of street improvements for the Town of Speedway.

"A. Yes."

Kridler further testified that he was personally familiar with the streets in question, had measured the defective areas, and had made an extensive investigation of the various methods which could be employed to repair the failures in the streets. He testified that he had computed the number of square yards of area which required repairs and had calculated the number of tons of concrete which would be required to carry out such repairs. He related in detail three different

methods which could be followed in making repairs and stated the manner in which his calculation for the cost of the repairs had been computed for each method. Kridler finally testified that his estimate of the costs was "arrived at from my experience and consultation, and, as near as I can determine from an engineering estimate, it is correct."

In light of this testimony it is the opinion of this Court that the appellants' contention that this witness' testimony was based on hearsay is without merit. In his capacity as Town Engineer of the Town of Speedway and also as an expert witness, Kridler could draw upon all sources of information coming to his knowledge or through the results of his investigation in order to enable him to formulate an opinion regarding the costs of repairs. The fact that he consulted with other individuals does not render his testimony hearsay. An expert is competent to judge the reliability of statements made to him by other persons and taking these statements made to him by other persons together with his own first hand observations comprises a sufficient basis for a direct expression of his own professional opinion as to the cost of repairing the street. In *Isenhour* v. *State* (1901) 157 Ind. 517, 62 N. E. 40, the court said:

"Courts have never undertaken to set up a standard of scientific knowledge by which the competency of a witness may be determined and have not gone to the extent of holding that a scientific witness can only testify from facts learned by him from personal demonstration. The general rule, in such cases, in this State at least, seems to be that where a witness exhibits such a degree of knowledge gained from experiments, observation, standard books, or other reliable source, as to make it appear that his opinion is of some value, he is entitled to testify, leaving to the trial court, in the exercise of a sound discretion, the right to say

when such knowledge is shown, and to the jury the right to say what the opinion is worth; and, as in all other cases of discretion, this court will review the action of the trial court only when that discretion clearly appears to have been abused."

The second error relied upon by the appellants is that the court improperly admitted into evidence appellees' exhibit number 40 which was a report of soil compaction tests compiled by a Frank W. Parsons. The appellants allege that because Parsons did not personally make the tests it was based on hearsay and the court was in error in admitting it into evidence. It is the appellants' contention that a John McFadden, who assisted Parsons in the making of these tests, should have been brought into court as a witness so that he could be cross-examined by the appellants and that in effect, witness Parsons was relating hearsay testimony of a person other than himself. However, the record reveals that Parsons personally supervised the making of these tests, that he used the procedure followed by a national testing company and others in related fields for the making of such tests, that he personally supervised the tests that were made at the laboratory and that he was the one who prepared the written findings which were admitted into evidence. He further testified that it was his report based upon personal observation and that it was his signature which appeared on the report. The record further reveals that Parsons was the only person who could have properly identified appellees' exhibit number 40 and the related findings therein.

"Q. Now, did you reduce your findings to writing, both in the field and at the laboratory?

"A. Yes sir, I did.

"Q. Did you bring a copy of those findings with you?

"A. Yes sir, I did.

"Q. Do you have a copy which we can mark for identification?

"A. The easiest identification will be that our file copy is made on master sheets and anyone with blue master ink will serve as identification purpose.

"Q. Now did you record and prepare findings made on what has been marked for identification as 'Plaintiffs' Exhibit 40'?

"A. Yes sir.

"Q. And is it your signature that appears on Plaintiffs' Exhibit 40?

"A. Yes sir.

In light of Parsons' testimony we do not believe that the mere fact that the witness did not physically perform the tests renders the report hearsay evidence. The witness was present when the tests were made. Indeed, he even personally supervised the making of the tests both in the field and in the laboratory and from the information gathered he compiled his report which contained his signature and was admitted into evidence as plaintiffs' exhibit 40. Clearly, he was the proper party to identify the report.

The appellants next contend that there was error or irregularity in the proceedings of the trial court which resulted in the appointment of Otto W. Cox as Special Judge. The appellants allege that they were lead to believe that Otto W. Cox was presiding as Judge Pro-Tempore instead of as a Special Judge by reason of the fact that the Bailiff of the court announced Cox each day as Judge Pro-Tem, but on the final day the Bailiff announced Cox as a Special Judge. However, they did not object at that time but rather chose to let the cause be sub-

mitted to the jury. While it is evident the court did not comply with Supreme Court Rule 1-12 prescribing the manner of selecting Special Judges, it has been held that irregularities in the selection of a special judge are considered waived when an objection thereto has not been timely made. *Gears* v. *State* (1931), 203 Ind. 400, 180 N. E. 592. If appellants had an objection to Mr. Cox as Special Judge in order to preserve the error they were required to object as soon as it came within their knowledge that he was not serving as Judge Pro-Tempore. They cannot be allowed to gamble by submitting the case to the jury and then after an adverse judgment be heard to complain that there was an irregularity in the proceedings.

Finally, the appellants complain that the court erred in giving appellants' tendered instruction number 18. The court did not give the instruction as it was tendered, thereafter, it was modified by the court and the modified instruction was given to *which no objection was made* by the appellants. Under Rule 1-7 of the Supreme Court, specific objection to an instruction is required and no objection to an instruction can be made on appeal that was not made in the trial court. *Lively* v. *Hanagan Bros. Inc.* (1950), 120 Ind. App. 503, 92 N. E. (2d) 223, Petition for Rehearing Denied 93 N. E. (2d) 202. *Sims Motor Transport Lines, Inc.* v. *Davis* (1955), 126 Ind. App. 344, 130 N. E. (2d) 82.

By reason of the conclusions we have reached the appellants have failed to demonstrate any error and the judgment is hereby affirmed.

Judgment Affirmed.

Bierly, C. J., Hunter and Mote, JJ. concur.

NOTE.—Reported in 210 N. E. 2d 95.